JOSEPH BASSETT and others v. ISAAC JOHNSON and WILLIAM JOHNSON.

* The practice of sending ordinary matters to a jury for their decision, ought to be discouraged. But in important cases, where the evidence is so contradictory as to raise serious doubts on the mind of the court as to matters of fact, it is proper to direct an issue, or order a suit at law.

Issue awarded, with special directions touching the conduct of the trial; and leave given for a special jury.

THIS cause came originally before the court upon motion for an injunction, upon bill filed and affidavits taken by both parties, when the injunction was allowed. It was afterwards heard upon motion to dissolve the injunction after answer on the part of the defendants, which motion was denied.† The evidence having been taken, the cause came on for final hearing at January term, A. D. eighteen hundred and thirty-six, upon the pleadings and proofs.

* Accord. *Trenton Banking Company* v. *Woodruff*, 1 *Green's Chan. R.* 117; *Garwood* v. *Admr's of Eldridge*, *Ibid*, 290.

† See ante, page 374, reported in the name of *Sinnickson* v. *Johnson*.
53

[Bassett et al. v. Johnson.]

*McCulloch* and *Williamson*, for complainants.

*Jeffers*, for defendants.

THE CHANCELLOR. The bill was filed in this case in July last, for an injunction to restrain the defendants from further building and completing a dam, then in progress, in Salem creek. The injunction was sought on the ground that valuable meadows and property of the complainants were seriously affected by the obstruction which had been placed in the stream, and that, if the defendants were permitted to continue and complete it, the meadows would be irreparably injured. After a full hearing of the parties on the application, affidavits having been taken on both sides, an injunction was ordered. The court was satisfied that serious injury had been suffered by the complainants, and the weight of evidence went to show that if the dam was completed and made tight, the injury would be increased and become irreparable. It was strongly insisted at the time by the defendants, that the flow of water upon the meadows was occasioned by unusually heavy rains, which fell on the twelfth and fifteenth of July, and not by the obstruction in the creek; and that the completion of the dam would not seriously injure the meadows. Hence the court, in delivering the opinion, took occasion to state, that if it should turn out, as the defendants supposed and believed, that the injurious overflow was occasioned, not by the dam, but by the rains which had lately inundated that part of the country, and was therefore accidental and temporary; or if the defendants could, at some future time, make it appear that the completion and filling in of their dam would not raise the water so as permanently and seriously to affect the property of the complainants, the injunction might be dissolved, and the complainants turned over to their legal remedies.

The defendants having filed an answer to the bill, moved to dissolve the injunction on the answer. This was refused by the court, for reasons heretofore given, and the cause was brought on for final hearing in January.

[Bassett et al. v. Johnson.]

It was supposed that the question involved in the issue could not be of difficult solution; that whether the meadows had been seriously affected by the overflow, was a plain matter of observation, about which there could not be much contrariety of opinion; that whether the injury was continuous, the result of some abiding cause, or temporary, occasioned by heavy rains, could be readily ascertained without any dispute; and that the question whether the completion of the dam would or would not increase the water above, would be readily answered to the satisfaction of all.

In this the court has been disappointed. Upon each point there is great diversity of sentiment. Upwards of sixty witnesses have been examined, some of them at great length, and an immense volume of testimony has been taken, some of which, however, has but a remote bearing upon the issues.

The cause was elaborately and ably argued, and I have endeavored to give to it a careful examination. And,

Upon the *first* point, to wit, whether the meadows of the complainants had been seriously affected by the overflow, I think the evidence proves that they were injuriously affected during the last season, or a part of it, by water standing upon them. That matter was proved before the injunction was allowed, in August, and the weight of the evidence now before the court confirms it. It is fully shown that they were considerably inundated, and for a longer period of time than usual, and at a season of the year when the effect must necessarily have been injurious. It will be unnecessary to dwell on this part of the case, as it is not important.

Upon the *second* point, whether the injury sustained was continuous, the result of some abiding cause, or temporary, occasioned by unusually heavy rains and back-water, there is great difference of opinion. And this I take to be the great question in the cause. These meadows, before the dam or stopping, were liable to be overflowed occasionally from rains and freshets, but the water soon ran off, and the injury, if any, was temporary. These overflows would vary according to the quantity of rain or

[Bassett et al. v. Johnson.]

water coming from above. In great rains and floods, such as those which occurred in July last, the meadows would be subject to their influence for a longer period of time than was usual. If the injury has resulted from this cause, and this alone, then the erection of the dam has not been prejudicial. On the other hand, if the dam or stopping has so operated upon the water of the creek above, as to prevent the waters on the meadows running off as they otherwise would have done, and thereby the meadows have been injured, and continue to sustain injury; and if the injury is of a serious character, permanently impairing the value of the meadows, the dam must be considered as a nuisance and the complaint of the plaintiffs just.

Respectable men differ widely on the subject. Some insist, and with a knowledge derived from personal observation too, that the meadows were no more wet than in former years, except just at the period of the heavy rains, and that those rains passed off without material damage; and some think they were drier;— while others most positively affirm that the meadows were seriously injured, not owing to heavy rains and back-water, but to the height of water in the creek; that the dam prevented the tide above from falling to its ordinary level by one and a half or two feet, and some say two and a half feet, in consequence of which the waters could not be drained off the meadows; that the sluices could not play, the water even at low tide being higher in the creek than in the ditches, and of course there was no vent; and that the waters continue to injure the meadows, though not so much now, since the dam has settled.

I have sought with great solicitude to reconcile the testimony, but without success. The fact that the tide, since the erection of the dam, does not rise so high nor fall so low as before, is most clearly established. It admits of no dispute. The plain inference from this fact would seem to be, that the meadows cannot be so well drained as before. It is proved that they are low and flat. They can be drained only by sluices leading the water from them into the creek. If when the creek fell to its ordinary level at low water, they were not more than sufficiently drained, how can it

be that when the tide does not fall to that level by the space of two feet, they can be cleared of water as well as before ? And yet respectable witnesses testify that the meadows are as dry as heretofore, and that the stopping has had no effect upon them. I am unable to account for this. It is said, to be sure, that since the dam the tide does not rise so high as formerly ; but I do not perceive how that helps the case. The ordinary tides are kept out by the embankments ; and whether they rise higher or lower is of no consequence, unless they overflow the banks. The water vented by the sluices is not ordinarily the tide water, and it cannot be vented unless the tide falls low enough to admit a free passage through the sluices.

My own inference would be, that these meadows, being low, must sustain permanent injury in consequence of the tide not falling as low as formerly ; and with this inference the complainants' witnesses accord. But they are met by positive testimony on the other side, affirming that no such result has taken place, and that the meadows have been, taking the season through, as dry as formerly. And I feel embarrassed in forming a judgment that is to decide the rights of these parties to a very large amount. I am relieved to know that there is a mode in which the facts can be ascertained, and the conscience of the court informed. It is a fact the decision of which, under all the circumstances of the case, is peculiarly proper for the decision of a jury. I am opposed to the practice of sending ordinary matters to a jury for their decision, and think it should be discouraged ; but in important cases, where the evidence of respectable witnesses, with the same means of information, is contradictory, so as to raise serious doubts on the mind of the court, it is proper to direct an issue, or order a suit at law. In this case I think an issue would best answer the purposes of justice. It would be more expeditious, and more under the control of the court ; and if the facts be once ascertained, whether the erection be or be not a nuisance, there will be little difficulty in settling the case.

I shall, therefore, direct an issue to be made up in the usual way, to try the fact, whether the erection of the dam by the de-

[Bassett et al. v. Johnson.]

fendants has seriously and permanently affected the meadows of the complainants lying above it; and that the issue be carried down for trial at the next Salem circuit, in June. Either party may notice the cause for trial, and the defendants in the issue may carry down the record by proviso, so that the trial may be had at the ensuing circuit. A special jury will be ordered by this court, on the application of either party, subject to the preference given to the plaintiff by the rules of the supreme court.

Where witnesses are dead, or cannot be procured, their examinations may be read; and no new witnesses shall be produced without giving fifteen days notice of the intention to produce them, with the name, addition and place of abode of such witnesses.

Order accordingly.